SULLIVAN *v*. TURNER ET AL.

[82 South. 325, In Banc. No. 20492.]

1. BROKERS. *Commissions. Right to.*

Where brokers were authorized to sell land under an agreement which provided that deferred payments should be secured by a deed of trust on the entire tract, they are not entitled to commissions for procuring purchasers, ready, able and willing to buy, where the contracts with the purchaser provided a different method of securing the deferred purchase price.

120 Miss.—31.

2. SAME.

    Where brokers who were authorized in writing to sell land entered into contracts of sale materially departing from their authorization, the fact that the owner, when the purchasers were produced, agreed to sell to them on the terms of their offer, does not entitle the brokers to compensation; the agreement so far as the brokers are concerned being without consideration to support it.

APPEAL from the chancery court of Coahoma county. HON. JOE MAY, Chancellor.

Bill by R. P. Turner and another against J. L. Sullivan. From a decree for complainants, defendants appeals.

This appeal is from a decree of the chancery court of the Second district of Coahoma county. Appellees sued for three thousand two hundred and ten dollars as commissions for selling a section of land owned by appellant. Decree for appellees was given in the sum of one thousand seven hundred and sixty-seven dollars and sixty-two cents, from which decree this appeal is prosecuted.

Appellant J. L. Sullivan lived at Oaktown, Ind., in the year 1916. He was the owner of an entire section of land in the Second district of Coahoma county—section 32, township 25, north, range 3 west, containing six hundred and forty-two acres. Appellees in the year 1916 were engaged in a real estate business and were located at Tutwiler, Tallahatchie county, Miss.

On August 24, 1916, an instrument pertaining to the sale of the said land was signed by Sullivan, this appellant.

The said instrument appoints the appellees the duly authorized agents of the first party to sell the said section of land "on the terms hereinafter stated." The terms thereinafter stated were thirty-two thousand one hundred dollars, ten thousand dollars cash, balance in four equal installments due in one, two, three, and four

years from January 1, 1917, with six per cent. interest, all deferred payments "to be secured by deed of trust on the lands above described, executed by purchaser thereof." The appellees had till January 1, 1917, to act under this instrument. But either party could cancel it upon thirty days' notice. The appellees were to get five per cent. commissions and any amount they might get for the section in excess of thirty-two thousand one hundred dollars, or fifty dollars per acre.

On the 29th day of December, 1916, R. P. Turner and B. P. Stevens, these appellees, claim to have sold this section of land to three sets of purchasers, the northwest quarter to H. B. Sewall, of Dublin, Miss., for eight thousand dollars; one hundred and sixty acres (not described) to H. B. Fitch, of Tutwiler, Miss., for six thousand four hundred dollars; three hundred and twenty acres (not described) to P. M. Smith and T. B. O'Keefe, Rome, Miss., for nineteen thousand three hundred and five dollars. It is to be noted that Sewall was to get his at fifty dollars per acre, Fitch his at forty dollars and Smith and O'Keefe were to pay sixty dollars.

The appellees claim to have executed contracts of sale on December 29, 1916, to these several parties. These instruments are signed by the respective alleged purchasers and "Turner & Stevens, Agents for J. L. Sullivan, by R. P. Turner." The contract with Sewall describes the land as northwest quarter of section 32, township 25 north, range 3 west, and names the consideration as eight thousand dollars, of which one-half was to be cash upon delivery of deed and the balance to be paid in four installments of one thousand dollars each due on the 1st day of January of each of the years 1918, 1919, 1921, and 1922. The deferred payments were to carry six per cent. interest. The instrument is silent as to how or by what instrument or upon what terms the deferred payments were to be secured. It provides for no security whatsoever. It does not provide for the

protection of the vendor's lien, nor for the execution of notes.'

The so-called contract with H. B. Fitch undertakes to give Fitch the right to purchase "that certain parcel or tract of land being, lying and situate in Coahoma county, Mississippi, and containing one hundred and sixty acres at and for the sum of forty dollars per acre." There is no further description of the land. Of the purchase price of six thousand four hundred, two thousand four hundred dollars was to be paid cash and the balance in four installments of one thousand dollars each, in one, two, three, and four years from January 1, 1917, and all to bear six per cent. interest from said date. Nothing is said about notes or security. Let it be noted that in the Sewall contract one-half was to be paid cash and in the Fitch contract three-eights was to be paid cash, and in the Smith and O'Keefe contract less than one-fifth was to be paid cash. In the original option contract a little less than one-third was to be paid cash.

The contract claimed by appellees to have been made with Smith and O'Keefe described the land to be sold "three hundred and twenty acres more or less, and being a part of the Sullivan tract containing six hundred and forty-two acres." The consideration was to be nineteen thousand three hundred and five dollars, to be paid five hundred dollars cash, three thousand one hundred dollars upon delivery of deed, and five thousand one hundred and thirty dollars, January 1, 1918, and three thousand five hundred dollars on the 1st day of January of each of the years 1919, 1920, and 1921. There was nothing said about notes or security.

In each of the said contracts the receipt of earnest money is acknowledged—from Sewall one hundred dollars, from Fitch four hundred dollars, and Smith and O'Keefe five hundred dollars. This cash payment was

made upon condition. This condition, as expressed in the Sewall contract, is:

"Now therefore in consideration of the said sum of one hundred dollars cash mentioned above the said Turner & Stevens as agents of said J. L. Sullivan hereby agree to obtain from said Sullivan a general warranty deed and deliver same to said Sewall, if same can be procured, but if the said deed cannot be procured, then said Turner & Stevens hereby agree to return to said Sewall the said sum of one hundred dollars in earnest money."

On the same day the alleged contracts were signed, December 29, 1916, there were made by Turner & Stevens deposits in the Progressive State Bank of Tutwiler, checks of Sewall, Smith, and Fitch, aggregating one thousand dollars.

And on the same date a night lettergram was sent to appellant as follows:

"We have sold your place as per terms of option to following parties: H. B. Sewall northwest quarter, H. B. Fitch east half of east half, P. M. Smith and T. B. O'Keefe balance. Have one thousand earnest money. Letter following."

And it appears that on the same date a letter was written by Turner & Stevens, which letter is as follows:

"This is to confirm our night lettergram of this date wherein we wired you as follows:

" 'We have sold your place as per terms of option to following parties: H. B. Sewall, northwest quarter; H. B. Fitch, east half of east half; P. H. Smith and T. B. O'Keefe balance. Have one thousand dollars earnest money. Letter following.'

"We saw Mr. Conrad and he stated that you would come right down and make out deeds, etc., to parties named above and as they are all very anxious to pay over their money and get their deeds we hope that you will give this matter your immediate attention. Of

course you will have to furnish an abstract and a good warranty deed. Attorney making abstract can make carbon copies and it will not cost any more to prepare the three abstracts all at once than it would one abstract, so you can furnish one with the original and the other two parties with carbon copies of same. We collected one thousand dollars in cash from these parties and have it in the bank here and as soon as you deliver them deeds the balance of the ten thousond dollars cash payment will be turned over to us to be delivered to you less our commission of five per cent, which of course comes out of the cash payment. We have tried hard to sell your place and finally made it, but it was hard work as so little of the land is in cultivation, and the cash payment so large. These parties we are selling to are all good folks and you will never regret selling to them and besides you should feel good over the sale owing to the high taxation caused by the drainage tax levy.

"Please let us hear from you by return mail, as we want to close this matter up at once."

On December 31st Sullivan wrote as follows: Yours to hand and in reply will say that I will meet you at the farm Friday morning to arrange details; and will try to have the abstract brought up to date at that time, Friday, January 5th."

On Friday, the 5th, Sullivan and a man named Taylor, who seems to be his attorney and adviser, met Turner, Stevens, Smith and O'Keefe on the land. It appears that Sullivan did not have a copy of the option contract of date August 24, 1916. When they met at the house on the premises, Taylor or Sullivan asked to see that contract, and it was handed to him. Appellees claim that the contracts with the prospective purchasers were read over to Mr. Sullivan on the premises that day, and that they walked out and talked about lines, live stock, agricultural products, and farming imple-

ments. They say that these matters were discussed as if it were expected to carry out and close the proposed trades. There was no writing, however, other than the instruments, letters, and telegram above set out. Turner and Stevens wanted to go to Tutwiler and close the matter, but Sullivan told them that he would meet them at Clarksdale on the following day. They met at Clarksdale on the next day and went to the office of Sullivan's attorney and there appellees were advised that Mr. Sullivan would not make deeds in the manner proposed. Turner and Stevens both say that they explained to Mr. Sullivan all the time that the trade which they had made were in accordance with the terms of the option contract; that they themselves believed this to be true; and that they so explained the trades and proposed contracts to Mr. Sullivan. They say that when they met at Clarksdale on the 6th the parties were able and ready and willing to accept deeds and make cash settlments as provided in the contracts of December 29th. However, no deed was signed by Mr. Sullivan. Fitch was not at Clarksdale; neither was Sewall there.

On the 11th day of January, 1917, R. P. Turner and B. P. Stevens, these appellees, filed their bill in the said chancery court against Sullivan to recover alleged compensation for selling his land. Their bill sets out and makes part of the bill the several contracts, letters, and telegram above described herein. The bill charges that the land was sold in accordance with the terms of the option contract of August 24, 1916, and that the parties to whom the land was sold by them were able, willing and ready to carry out the contracts and that Sullivan refused to do his part, and that they are entitled to their commissions just as if Sullivan had made the deeds, collected the cash payments, and taken notes and trust deeds from the several parties covering their respective purchases. They claim that they had sold the land for thirty-three thousand seven hundred and five

dollars, or for one thousand six hundred and five dollars more than the price fixed by the option contract, and that this should be added to their five per cent. commissions. This five per cent. would have amounted to one thousand six hundred and five dollars, which added to the one thousand six hundred and five dollars would make the amount of their claimed commisions, or three thousand two hundred ten dollars.

A demurrer to this bill was filed by the defendant, this appellant, raising several questions: (1) That the bill shows no ground for relief. (2) That the instrument of August 24, 1916, was only an offer and not binding until accepted in the identical terms in which it was made. (3) That the land was not shown to have been sold in accordance with the terms of that contract. (4) That the bill on its face showed that the complainants did not prior to January 1, 1917, secure a purchaser of the land who would pay ten thousand dollars cash and execute a deed of trust to secure the deferred payments to be made in one, two, three and four years. (5) That the defendant had breached no contract with the complainants.

This demurrer was heard and overruled on the 17th day of April, 1917. And then an answer was filed by the defendant in which the execution of the instrument of August 24, 1916, was admitted and the receipt of the lettergram of December 29th and the writing of the letter of the 31st of December and the meeting on the premises on January 5th and at Clarksdale on January 6th. It was denied, however, that there had been any sale of the property in accordance with the terms of the August, 1916, contract. It was further denied that there was ever any agreement in writing or otherwise on Sullivan's part that he would take one deed of trust from Sewall covering the part to be conveyed to him and another from Smith and O'Keefe for the part to be conveyed to them and another from Fitch for the

part to be conveyed to him, and that what each purchaser got was to be released from any liability for the balance on the purchase price of the other. parts of the section. Defendant further charged that it was explained to him and he so understood that the property was. sold in accordance with the contract of August, 1916, and that when he found that it was not so sold he declined to proceed further; that he was misled into the negotiations of January 5th and January 6th by the lettergram and letter addressed to him on December 29th, both of which advised him that the sale had been made in accordance with the terms of the option contract.

When Sullivan went out on the land January 5th, he met there Turner, Stevens, Smith, and O'Keefe. The same persons went to Clarksdale the next day. Sewall was not at either meeting, nor was Fitch. It is not shown that Sullivan ever met Sewall or Fitch, nor that he ever had any communication with them. Nor did either Sewell or Fitch testify at the trial. O'Keefe testified that the contract evidenced by the writing of December 29, 1916, is the only contract he had with Turner and Stevens. The contract with Sewall bears the notation, "Deed to be made to H. B. S. and Thos. S. Hayes."

Testimony was heard and the court allowed complainants five per cent. Commissions on thirty-three thousand and seven hundred and five dollars, the total called for by the three contracts which complainants claimed. to have made on December 29th, with six per cent. interest after January 6, 1916. The amount allowed by the decree is one thousand seven hundred and sixty-seven dollars and sixty-two cents. The land was condemned to be sold to pay the decree.

*J. N. Flowers* and *Brewer, Brewer & Brewer,* for appellant.

Appellees are not entitled to commissions on the theory that they sold the land in accordance with the terms

of the land contract of August 24, 1916. They were to get this commission in the event that they themselves sold the land in accordance with the terms of the option contract, and if they sold it for more than thirty-two thousand one hundred dollars it was provided that they should have the excess.

It is evident that upon this theory these appellees are entitled to nothing. The land was not actually sold. It was not sold by Turner, it was not sold by Sullivan. If Sullivan had sold to a purchaser not procured by Turner, the latter would have claimed commissions though under the authorities he could not have succeeded. *Kolb* v. *Land Co.,* 74 Miss. 667, 21 So. 233; *Jayne* v. *Drake,* 41 So. 372.

The appellees are not entitled to recover under paragraph second of their contract on the theory that they obtained a purchaser who was ready, able and willing to take the property on terms specified in the contract. When we eliminate the liability of appellant to appellees for commissions to accrue upon the bringing of a party ready, willing and able to take the property on the terms specified in the contract we narrow the investigation. We think it is safe to assume, as evidently the lower court did, that no actual sale was made and that no persons were brought as purchasers who were ready, able and willing to take the property under the terms specified in the contract. The terms upon which appellees proposed to sell the property and the terms specified in the contract of August, 1916, are far apart in vital particulars.

It remains to examine the right of appellees to recover on some theory which assumes that they did not sell the property on the terms of the option contract and did not find purchasers ready, able and willing to take it upon these same terms.

Sullivan made the one contract, that of August, 1916. Upon this contract appellees sue for commissions. They

base their right upon no other agreement or understanding. They asked for five per cent commissions and one thousand six hundred and five dollars, the excess over thirty-two thousand one hundred dollars. They stand upon the contract of August, 1916. They claim that this contract gave them the right to recover the commissions. They claimed that they performed this contract; that they sold the land in accordance with the terms of their contract; and testify that they so explained the transaction to Sullivan a man who cannot read nor write. They themselves, so they affirm, were of the opinion that they had sold the property according to the terms of the option agreement and that when they discussed it with Sullivan they were under that impression and that they undertook to convey to him the same idea.

But the court evidently did not think that they had sold the property upon the terms mentioned in the option contract because he allowed commissions of five per cent only. And allowed this on the total and did not allow appellees the excess claimed. The original bill depends wholly upon the written contracts.

The appellees, the complainants in the court below, took the position that they had a written contract with Sullivan to sell his land, the entire section, and that they did actually sell it in accordance with the terms of that contract dated August 24, 1916. They testify that they thought at the time they were acting within the terms of their written authority; they testified that they so understood it on January 5th, when Sullivan met them; they wired Sullivan to that effect on December 29th; they confirmed the telegram in their letter of the same date; they filed their bill on this theory. Then the only question in this case did Turner and Stevens make binding contracts with the purchasers to sell them the land on terms set out in the contract of August 24th? The answer to this question appeals to us to be beyond

doubt. They did not sell the land according to terms of the option even if the contracts themselves were otherwise sufficient. Sullivan expected and they contracted not to secure deferred installments of the purchase price by a lien on part of the property but that all the deferred payments would be secured by lien on the entire section of land. This was a vital term. Any business man would so regard it. It is not an unimportant detail merely to quibble over. Instead of binding the would be purchaser to this term it was proposed to divide the section into three parts and let each part stand alone in securing the balance of its purchase price. And a large proportion of the purchase price was to be paid in cash as to two parcels and a very small proportion was to be paid in cash of the purchase price of the other parcel, the larger one amounting to one-half of the section. And to aggravate this the shall proportion of cash was to be received on the part for which the largest price per acre was to be paid. For the part Fitch was to buy, the paper might be good; for that Sewall was to buy the paper might be first class; but for the other one-half of the section proposed to be sold at sixty dollars per acre with only a small cash payment, the paper might be insufficiently secured. Although these contracts so widely differ in their terms from the option contract the bill is filed on the theory that the land was sold in pursuance of the terms of the written authorization. These were special agents. It needs no authority to so classify them. They could do nothing except that which they were expressly authorized to do and persons dealing with them are held to have acquainted themselves with the extent of their special authority. *Planters Bank* v. *Cameron,* 3 S. & M. 609; *Brown* v. *Johnson,* 12 S. & M. 398. There is no claim in the bill that they made contracts which had to be ratified and that they were so ratified by Sullivan. This claim is not made doubtless because it appeared clear

to counsel that there was nothing done by Sullivan which could possibly be construed to be a ratification and because void contracts are not helped by ratification unless the defect in them is lack of authority in the agent. If an agent exceeds his authority and makes a contract valid but for the absence of his authority the ratification of the principal will make it good. But no ratification by Sullivan could supply the defects in the contracts which are absolutely void on their face. They would not have been good if Sullivan had made them himself. Of neccessity they would not be any better if made by Turner and ratified by Sullivan. No ratification could describe the land; no ratification could supply the omitted terms. It could not be said, as was doubtless recognized by counsel, that Sullivan ratified anything by coming down here on the 5th of January after he had got the telegram and letter from Turner. These communications advised Sullivan that the sale had been made as per the terms of the option. He was misled. He came down here upon misinformation. From the advices he had it appeared that Turner & Stevens had sold the land so as to net him fifty dollars per acre less the five per cent. commission with notes for the balance secured by a lien on the entire section. It may be that Turner & Stevens thought the sales contemplated were in accordance with the terms of the August contract. They so advised Sullivan by wire and letter; so explained to him on January 5th and so insist in their pleadings. They say that they explained to him out on his place on January 5th that he would have to take separate deeds of trust. But Sullivan says he did not understand it this way. And it is not strange that Sullivan did not understand it this way when it was explained to him that the sale was made in accordance with the August contract, he being a man who could not read nor write and when the man who was explaining it to him thought the same thing. This particular part was

not emphasized. But there is no question of ratification brought into the case and the appellees must stand or fall upon their pleadings. They have not pleaded any ratification for the obvious reasons that there is nothing in the facts to support such a position.

So we have these people trying to recover commissions for the sale of land under a special contract where the sale was never consummated; where the written contracts depended upon to bind the purchasers are void on their face; and the contracts are not in accord with the authorization and the contracts do not contain the terms which the agents say entered into the agreement. And further the case is presented upon the theory that all these vital essentials are present when in fact they are clearly absent.

There is no undertaking by these parties to recover upon new contracts or understandings made or had January 5th, five days after the expiration of the time limit fixed by the August option. It is not claimed that there was any new contract. There was but one and it is dated August 24, 1916. We are willing to concede that if Turner & Stevens had brought together Sullivan and the persons who desired to purchase on January 5th and they entered into a binding contract upon new terms, or if they had been thus brought together and Sullivan had actually conveyed them the land on terms satisfactory to himself, Turner & Stevens might be held to have brought about the trade and to be therefore entitled to commissions on a *quantum meruit* basis. But this is no such case. The agent had authority to sell the land on the one set of terms. There was never any binding contract entered into on these or any other terms, and no contract binding or otherwise on the terms given the agents by the principal and there was no consummation of any trade.

The broker with a contract to sell or find a purchaser has been held entitled to recover on his contract.

1. If he gets terms from the owner and is authorized by the owner to offer the property on these terms and he finds a purchaser who will take the property on the specified terms and the sale is consumated by a transfer of title.

2. If he is authorized to sell on certain terms and procures a purchaser who binds himself to take the property on the specific terms.

3. If he is authorized to sell on certain terms and produces a purchaser ready, able and willing to bind himself to take the property on the specific terms. This is quite a popular rule, but not sound as we contend).

4. If he is engaged to sell on no specific terms or to find a purchaser and does produce one who takes the property on terms agreed upon by the purchaser and owner when they are brought together.

5. If he has no specific terms but is employed to find a purchaser and he does produce a purchaser who enters into binding contract on terms fixed by the person produced and the owner.

6. If he has no specific terms but is engaged to find a purchaser and does produce one who is ready, able and willing to take the property upon terms agreed to by the owner at the time, but no binding contract is entered into nor any sale consummated. (Liability on this showing is supported by considerable authority but it is not yet recognized by this court and is opposed to the rule followed in Oklahoma and other states.)

7. If he is authorized to sell on certain terms and produces one who enters into negotations with the owner and takes the property on new terms satisfactory to the owner the trade being consummated. The broker has been allowed to recover under such facts on a *quantum meruit* perhaps, as in *Enochs* v. *Paxton,* 87 Miss. 660, 40 So. 14.

8. If he is authorized to sell on terms specified and produces one who enters into negotiations with the pur-

chaser and makes with him a binding contract on new terms satisfactory to the owner. But we find no authority for the recovery of commissions upon these peculiar facts.

9. The broker has a contract to sell on specific terms and produces a person who enters into negotiations with the owner, and they come to an oral agreement upon new terms but no binding contract is entered into and no sale is consummated.

Under these facts the owner has not availed himself of the fruits of the agent's labor and the agent has not done what he had contracted to do, and we find no authority which permits the broker to recover unless one of two elements is present: The agent has done what he contracted to do; or the owner availed himself of the benefit of the agent's labors, whether the agent was under contract to perform the labor the fruits of which have been appropriated or not.

In the case at bar the utmost that could be said for these appellees is that they produced purchasers for one-half of the section, willing to take one-half of the section not upon the owner's terms but upon new terms. But recovery cannot be predicated upon this theory because there was never any agreement or purpose on Sullivan's part to sell a part without all; because no binding agreement was entered into between Smith and O'Keefe, and Sullivan, the persons who met January 5th; and because there was no consummation. In fact, the new terms were never fully outlined by anybody by parol or otherwise. Turner had a contract to sell on certain terms. He did not sell on these terms. He undertook to sell on new terms. He signed the contract, a thing he had no authority to do, and if he had authority the contract would not be binding because if its inherent defects. When he produced Smith and O'Keefe on January 5th and got them and Sullivan together his time limit had expired. That time is of the essence of such

contracts is well settled. *Hardy* v. *Sheedy* (Ore.), 113, Pac. 113; *Brown* v. *Mason,* 155 Cal. 155, 99 Pac. 867, 21 L. R. A. (N. S.) 328 and note. If the agent agrees to actually sell, he must do the work within the time; if he undertakes to procure a purchaser he must produce him within the time. In ruling case law, vol. 4, p. 305, the rule on this subject is thus written:

"To entitle a broker to the payment of his commissions it is essential that he prove not only the actual rendition of all the services called by his contract of employment, but that he completed the performance thereof within the time stipulated or before the expiration of such additional period as may have been granted by the employer in extention of that originally agreed upon. Where no definite period is settled upon in advance, it is to be inferred that the parties intended that the service contraced for should be accomplished within a reasonable time. . . . But where there is no fraud or bad faith on the part of the employer and the broker does not perform within the time limit, the employer after the expiration thereof may contract with a customer introduced by the broker within the period for performance, either upon the same terms or upon others more or less favorable than those the broker was authorized to offer, without incurring any liability to compensate the latter for his service."

So it appears that the only state of facts upon which these appellees could make a semblance of a case is that numbered 9 above herein, which clearly is insufficient. The pleadings do not bring them even within that statement, they do not seek recovery upon that ground and their evidence does not show any right to recover upon that ground. They had a contract to sell on specific terms by the first of January. They did not consummate any trade by the first of January nor afterwards; they did not cause or bring about any binding contract between the parties by the 1st of January or afterwards;

they did not produce any purchaser, ready, willing and able to take the property by the 1st of January or afterwards on the specific terms or on any other terms; they produced persons after the first of January and after the contract had expired who expresser themselves as being ready, able and willing to take one-half of the property on new terms but produced no purchaser at any time ready, able and willing to take all the property on any terms whatsoever. The purchaser who it is said were ready to take one-half of the property on terms which they have not defined. But no one has been found to take any part of property on any defined terms.

Under no theory are these appellees entitled to recover one cent from this man whom they fooled down here with the presentation that they had sold his property according to the terms which he had given to them.

W. H. Watkins, for appellee.

Appellant contends that the decree of the lower court should be reversed because the sale made by appellees was not in accordance with the terms of employment contained in the original contract. To illustrate the appellant's contention counsel have prepared, page 13 of their printed brief, what purports to be a tabulated statement of the authorized terms and proposed terms. We have always understood and recognized the rule that figures never lie. However, we are not willing to make the same concession in respect to people who sometimes use figures. With the greatest deference to counsel, in order to expose the fallacy contained in their compartative calculation, it is only necessary to call the attention of the court to the fact that under the head of authorized terms, counsel have used the basic price fixed in the contract; that is to say, the contract provided that the sale should net appellant thirty-two thousand dollars. The difference in the totals of the authorized

terms and the proposed terms lies in the fact that the land was sold for more than fifty dollars per acre; therefore, it necessarily brought more than thirty-two thousand dollars; and the contract provided that the appellees were to get the excess over thiry-two thousand dollars.

Appellant's counsel complain, however, that the land was to be sold to three different persons, and at different prices, and that the appellant would not have a mortgage or deed of trust upon the entire tract for the balance over the cash payment; and for this reason, appellant's counsel argue that the sale was not in accordance with the original contract and that the judgment should be reversed. There are three obvious replies to this contention:

(A) The sale to three different persons at different prices was not a violation either of the letter or spirit of the original contract. An examination of the original contract discloses no provision that appellees should sell the entire tract to one purchaser. In the contract there is found no prohibition, either express or implied, against the division of the tract into several different parcels. The contract does not in express terms say that the property may be sold in tracts smaller than the whole, but the object of the contract was to sell the land, and a sale to more than one purchaser was not in violation of the contract. The appellees were authorized to sell the land for not less than thirty-two thousand dollars and the net price to appellant, less commissions, was fixed at fifty dollars per acre which was thirty-two thousand dollars, as much as ten thousand dollars should be paid in cash, and the balance in four equal annual payments, with interest at six per cent. per annum; the deferred payments to be secured by a deed of trust on the property. We respectfully submit that the sale was not in violation of the contract. It was not necessary that the original contract of employment should, in express terms,

provide that the property should be sold in one body to one purchaser, and that the vendor should have a mortgage or deed of trust on the entire tract until, all the purchase money should be paid. In order to expedite sale, the division of a larger tract into smaller ones is customary, and a very usual and ordinary way of selling lands; and the giving of a separate deed of trust or mortgage by each grantee, securing the purchase money is the customary and usual method adopted in such sales; and it may be assumed that the parties to this contract contemplated making a sale, or sales, in the usual and ordinary way.

We respectfully submit that, since the appellant, his general agent and his attorney and the appellees construed that the sales as made were in accordance with the terms of the original contract, and permitted thereunder such construction is practically conclusive upon the court. In other words, to make ourselves clear, the authorities are unanimous that the best construction after all which can be placed upon a contract is the construction which the parties themselves placed thereupon.

In the case of *Ramsay* v. *Brown*, 77 Miss. 124, 25 So. 151, this court decided that when an employer, under a contract to pay a certain sum for a season's labor, at the end of the first month made a payment for the month's services, the parties construed the contract to mean that wages would be paid monthly, and the employer will not be permitted, when sued for the second month's salary, that he was not to pay anything until service for the entire season had been rendered.

Again, in the case of *Powell* v. *Russell*, 88 Miss. 549, 41 So. 5, this court said that where the parties to any contract of employment have dealt with it as a divisible contract and such construction will be sanctioned by the courts, so that the employee though leaving the employment before the end of the term, may recover his salary to the date of leaving.

Again in the case of *Spengler* v. *Stiles-Tull Lbr. Co.*, 94 Miss. 780, 48 So. 966, this court decided that in the construction of the contract, the contemporaneous construction placed upon it by the parties is entitled to great weight in determining the intent and purpose of the contract.

In the case of *Insurance Co.* v. *Butcher,* 95 U. S. 269, 273, the supreme court of the United States used the following language: "The practical interpretation of an agreement by a party to it is also a consideration of great weight. The construction of a contract is as much a part of it as anything else. There is no surer way to find out what the parties meant than to see what they have done."

Again in the case of *Nicholl* v. *Sands,* 131 N. Y. 19, at page 24, the appellate court of New York used the following language: "The practical interpretation of an agreement by a party to it is also a consideration of great weight. The construction of a contract is as much a part of it as any thing else. There is no surer way to find out what the parties meant than to see what they have done."

Again in he case of *Nicholl* v. *Sands,* 131 N. Y. 19, at page 24, the appellate court of New York used the following language: "The practical construction put upon a contract by the parties to it is sometimes almost conclusive as to its meaning."

In the case of *Church* v. *Sheldon,* 9 Wall (U. S.), 50, at page 54, the supreme court of the United States used the following language: "What adds great weight to this view is that it accords with the practical construction given to the contract by both parties. In cases where the language used by the parties to the contract is indefinite or ambiguous and hence, of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not controlling, influence. But in an executory contract, where its execution

necessarily involved a practical construction, if the minds of both parties concur, there can be no great danger in the adoption of it by the court as the true one.''

Going a step further, even if it be true as contended by appellant's counsel, that the sales made by the appellee, were not in accordance with the original contract, but were a variation therefrom, and in contradiction thereof, we respectfully submit that it was perfectly competent for the parties to modify the original contract of employment in this case. We recognize the rule which is well established that oral testimony can never be introduced to explain or contradict a written contract, and that a contract reduced to writing is conclusively presumed to embody all previous negotiations and understandings of the parties thereto. The exceptions to this rule, however, are very great, and one of the exceptions is that it is always competent to show that, subsequent to the making of the contract, the parties themselves modified the contract by some oral agreement.

In the case of *Redsnapper Sauce Co.* v. *Bowlin,* 50 So. 40, 95 Miss. 752, it was held that subsequent moral modifications of a written contract could be shown. And the same is held in the case of *Boyd* v. *Kelly,* 71 So. 897, 111 Miss. 629. See also Jones on Evidence, paragraph 442.

So it is utterly immaterial in this case whether the sales as actually made by the appellees were in accordance with and authorized by the original contract of employment, or were a variation therefrom. As soon as appellees made the contracts, they informed appellant's general agent, Mr. Conrad, thereof, the man who had entered into the contract with them for and on behalf of the appellant. He said the sales were all right and would be carried out. The appellees, by letter and telegram, informed the appellant of the sale, to which appellant replied that he would be on the premises on the

5th of January to close up the trade. Certain it is from this record, the fact that the sales were made to three different persons, at varying prices, with a separate deed of trust to be given by each purchaser, in no manner contributed to the appellant's refusal to make the sales. There has been a great increase in value of lands in that section of Mississippi in the past few years, which has been almost miraculous, and we are rather inclined to suspect that the prospect of increased values was instrumental in influencing the appellant not to make the sales.

SMITH, C. J., delivered the opinion of the court.

The appellees cannot recover upon the contract sued on for the reason that the terms on which the proposed purchasers, produced by them, were to buy the land, differed in several particulars from the terms on which the appellees were authorized by that contract to sell it; one material and controlling difference being that under the contract all of the deferred payments for the land were to be secured by a deed of trust on all of the land, while the offer of the proposed purchasers was that the deferred payments due by each of them were to be secured only on the land to be purchased by him.

Nor can they recover on the theory that, when the proposed purchasers were produced, the appellant agreed to sell to them on the terms of their offer, for the reason that, in so far as the appellees are concerned, that agreement, conceding that such an agreement was in fact made, is without any consideration to support it.

Had the appellant sold the land to the purchasers procured by the appellees, a different question might be presented, as to which we express no opinion.

*Reversed, and bill dismissed.*