## EDWARDS v. COBB.

(Circuit Court of Appeals, Fifth Circuit.   March 30, 1920.)

No. 3414.

I. **Brokers ☞84(I)—Must prove strict compliance with authority given.**

To entitle a broker to commission for a sale of property, it is incumbent on him to prove that the sale negotiated conforms strictly to the authority given by his principal.

2. **Brokers ☞49(3)—Authority to sell land does not include rents accrued.**

Written authority to a broker to make a contract for sale of farm lands at a price and on terms stated *held* not to authorize a contract for sale at the price named, which included the rents for the current year already accrued to the vendor.

In Error to the District Court of the United States for the Southern District of Mississippi; Edwin R. Holmes, Judge.

Action at law by R. L. Edwards against J. E. Cobb. Judgment for defendant, and plaintiff brings error. Affirmed.

J. M. Cashin, of Belzoni, Miss., for plaintiff in error.

C. C. Moody, of Denver, Colo., and J. L. Williams, of Indianola, Miss., for defendant in error.

Before WALKER, Circuit Judge, and CALL and HUTCHESON, District Judges.

HUTCHESON, District Judge. This is a writ of error from an instructed verdict for the defendant. Stating the facts in the strongest light for plaintiff in error, they are:

Defendant in error, J. E. Cobb, as owner of a tract of land in township 17, range 4 west, Sunflower county, Miss., addressed to plaintiff in error, Edwards, the following instrument, bearing no date of execution:

"Whitehaven.

"To R. L. Edwards, Belzoni, Miss.:

"For and in consideration of one dollar ($1.00), the receipt of which is acknowledged, I hereby appoint you exclusive agent to make sale of the real property herein described as lands owned by me in Sunflower Co., Miss., being in Secs. 23, 24, and 26, containing 815 acres, more or less, for the price of $100.00, on the following terms: $5,000.00 cash, and $20,000.00 on Nov. 15, 1918, and the balance secured by mortgage thereon for ——— years at 6 per cent.; and you are hereby authorized to accept a deposit to be applied on the purchase price, and to execute a binding contract for sale on my behalf.

"In case the above-described property is sold or disposed of within the specified time, I agree to make the purchaser a good and sufficient warranty deed to the same, and to furnish a complete abstract of title, if required; and it is further agreed that you shall have and may retain from the proceeds arising from such sale 5 per cent. commission on the above price and of the consideration for which said property is sold over and above price above specified, or any other person, then in that case I promise to pay you 2½ per cent. on the whole amount for which said property may be sold.

"This contract is binding until Sept. 15, 1918, and thereafter until terminated by ——— giving you as agent ——— days' notice in writing.

"This option is to take effect July 16, 1918.

"[Signed]   J. E. Cobb.
"[Signed]   ———.

"Witness: ———.
       "———."

The plaintiff, Edwards, accepted this proposition, and undertook to find a purchaser. Plaintiff testified that it was agreed between Cobb and himself that the deferred purchase price remaining due after November 15, 1918, was to be paid in five annual installments. On September 13, 1918, plaintiff, Edwards, purporting to act for Cobb, entered into the following contract with King:

"This is a contract made and entered into on this the 13th day of September, 1918, by and between J. E. Cobb, a resident of Whitehaven, Tennessee, and E. R. King, a resident of Le Flore county, Mississippi, and is as follows:

"Party of the first part, by his agent, R. L. Edwards, acting through the authority contained in a written contract executed by the said J. E. Cobb, and directed to the said R. L. Edwards, dated to take effect on July 16, 1918, hereby agrees to sell to E. R. King the following described lands in Sunflower county, Mississippi, to wit: All of the land owned by the said J. E. Cobb located in sections 23, 24 and 26, township 17, range 3, said county and state, containing 815 acres, more or less; and also all the interest the said party of the first part may have in the crops grown on said lands during the year 1918, whether the same be in the form of money rent, or parts of the crop. Party of the first part agrees to sell the above-described property to party of the second part for the sum of $81,500.00, the same to be paid as follows: $5,000.00 cash on delivery of deed by party of the first part to party of the second part, which shall be made as soon after this date as may be practicable; $20,000.00 is to be paid on the 15th day of November, 1918; $17,000.00, owing by party of the first part and secured by deed of trust on the above-described lands, is to be assumed and paid by party of the second part, according to the terms of said deed of trust; $7,900.00 is to be paid on the 1st day of January of each of the years 1920, 1921, 1922, 1923, and 1924. The last-mentioned deferred payments are to bear interest from this date at the rate of 6 per cent. per annum, interest on all of said payments to be paid annually on the 1st day of January of the years above mentioned. Party of the first part agrees to pay the interest accrued to this date on the aforesaid sum of $27,000.00; and, said sum of $17,000.00 bearing interest at the rate of 8 per cent. per annum, party of the first part hereby agrees to make good to party of the second part the difference of 2 per cent. on said sum, said difference to be either paid in cash, or the proper reduction to be made in the amount of each of the foregoing notes; it being the intent and purpose of this contract that all of the purchase price of the above-described property not paid in cash, as heretofore mentioned, shall bear interest from this date at the rate of 6 per cent. per annum. The deferred payments herein mentioned shall be secured by a deed of trust executed by party of the second part conveying the above-described lands, and shall be evidenced by the promissory notes of party of the second part bearing even date herewith. The party of the first part shall have a lien on all of the crops grown on said lands during the year 1918 to secure the payment of the aforesaid sum of $20,000.

"Party of the second part agrees to purchase the above-described property at the price, and on the terms and conditions, hereinbefore mentioned, and as an evidence of his good faith and of his purpose and intention to carry out the terms of this contract has this day paid to R. L. Edwards, agent of the party of the first part as aforesaid, the sum of $1,000.00, which sum party of the second part agrees may be retained by party of the first part as liquidated damages in the event party of the second part fails or refuses to carry out his part of this contract. Party of the first part agrees to deliver possession of the above-described property to party of the second part as soon as the deed and deed of trust herein mentioned shall be executed by the respective parties, and the aforesaid sum of $5,000.00 shall have been paid. Party of the first part agrees to furnish party of the second part, or his attorney, an abstract of title to said lands, showing a good and merchantable title thereto. Party of the first part agrees to furnish party of the second part a true, full

and complete statement of all rents received by him to date of delivery of possession, as aforesaid, from the above-described lands for the year 1918.

"Witness our signatures in duplicate at Belzoni, Humphreys county, Mississippi, on this the 13th day of September, 1918.

"J. E. Cobb,
"By R. L. Edwards, Agent.
"E. R. King."

At the same time there was a paper prepared by King, to be presented by Edwards to Cobb for execution, which was as follows:

"Whereas, J. E. Cobb, acting by and through his agent, R. L. Edwards, has this day entered into a contract to sell to E. R. King, all of the land owned by said J. E. Cobb in sections 23, 24, and 26 of township 17, range 3 west in Sunflower county, Mississippi, containing 815 acres, including the rent thereof for the current year, and also all of his right, title, and interest as landlord in the crops grown upon said land during the year 1918, part of said land being rented for money rent, and part of the same for a share of the crops, said sale to be made upon terms set forth in said contract, a copy of which is attached hereto; and

"Whereas, some little time will necessarily elapse in the examination of the title to said lands, and other matters preliminary to consummating said contract, and it is desired that the said E. R. King shall have some control and supervision of said crops between this date and the time of the consummation of said contract, so as to protect his interest therein, if said contract shall be consummated:

"Now, therefore, the said J. E. Cobb does hereby agree that the said E. R. King may go upon said lands, either in person or by his agent, and act with the agent of said Cobb, now upon said lands, in gathering, preserving, and marketing said crops, and the collection of rents from tenants on said lands so as to prevent any loss or waste, said crops or the proceeds thereof to be kept intact until the consummation of the aforesaid contract, and then to be turned over to and become the property of the said E. R. King.

"Witness my signature the 16th day of September, 1918."

This paper was immediately presented to Cobb, who refused to sign it or agree to its terms. Thereafter considerable discussion ensued between plaintiff and defendant, and their attorneys, as to whether or not Cobb would affirm and execute the contract with King, the upshot of which was that Cobb refused to recognize the contract which Edwards had made with King. King instituted suit for specific performance of the contract, and plaintiff brought this suit for his commission.

Apart from the written instruments above referred to, the only material evidence was that of the purchaser, King, who testified that he was ready, willing, and anxious to buy the property according to the terms of the contract which he had made with Mr. Edwards, and that he understood the contract to be that he had acquired, not only the land, but the rents for the entire year of 1918, those that were collected before he was to get possession, as well as afterwards, and that the unsigned instrument above referred to, which he prepared for Edwards to present to Cobb for execution, was to enable him to get the rents of the place for the entire year; the crop at the time of his signing the contract with Edwards being already moving. He further testified that, although the contract provided for a lump sum of $81,500 for 815 acres, he (King) was willing to buy the land for $100 an acre for any part that Cobb had title to.

At the conclusion of the evidence the defendant moved for a ver-

dict, and the court granted the motion. The only errors assigned here go to the admission into evidence of testimony claimed by the defendant to be objectionable, and to the action of the court in peremptorily instructing a verdict for the defendant. If, therefore, upon the construction of the evidence most favorable to plaintiff, he was not entitled to recover, the judgment must be affirmed.

[1] This being a suit by an agent to recover commissions, it was incumbent upon him to prove that he had complied strictly, in ipsissimis verbis, with his contract with his principal, and that he had found a purchaser able, ready, and willing to buy at the price and on terms which were strictly within the limits of his authority. .

"It is a settled principle of law that the broker can lay no claim to his commission until he produces a person who is ready, able, and willing to accept the exact terms of his principal. This is true, no matter how slight the variance may be between the contract tendered by the broker and that authorized by his employer." 4 Ruling Case Law, § 52.

To the same effect see Jepsen v. Marone, 22 S. D. 593, 119 N. W. 988, 21 L. R. A. (N. S.) 935; Everman v. Herndon, 71 Miss. 823, 15 South. 135; Sullivan v. Turner, 120 Miss. 481, 82 South. 325; Stoutenberg v. Evans, 142 Iowa, 239, 120 N. W. 59, 19 Ann. Cas. 1048.

These cases establish that exact compliance with the terms of sale, as to the manner and time of payment, is an essential to the right of recovery, and it does not lie in the mouth of the agent to debate with the principal whether the trade made for him is as good as, or better, than the one he proposed; the maxim that, as a man binds himself, so shall he be bound, being given strictest application.

[2] Applying these principles to the written documents and undisputed facts of this case, it is plain that the court did not err in instructing a verdict, for that in at least two particulars the agent has deviated from and exceeded his authority. His principal's contract authorized him to sell the land; he undertook to sell, not only the land, but all the rents incident to the ownership of that land for the year 1918.

"It is settled law that rents are incident to the reversion [Bloodworth v. Stevens, 51 Miss. 475], and without an express reservation an assignment or transfer of the reversion carries with it the right to the rents subsequently accruing. 24 Cyc. 1172.

"But it is equally well settled that the transfer of the reversion does not carry to the assignee the right to rents already accrued." 24 Cyc. 1173; 51 Miss. 475; 16 Cyc. 662.

In 39 Cyc. 1628, it is stated:

"Rent is incident to the reversion, and in case of the conveyance from the vendor to the purchaser, while rents already accrued remain the property of the vendor, those subsequently accruing pass by the conveyance to the purchaser."

And again it is stated in 39 Cyc. 1629:

"In the absence of an agreement the vendor is entitled to all rents and profits which have accrued prior to the date of the contract."

In this case the agent, having the authority merely to sell the land, undertook to sell "also all the interest the said party of the first part may have in the crops grown on said land during the year 1918, wheth-

er the same be in the form of money rent or parts of the crop," and enforced this agreement by the further stipulation:

"Party of the first part agrees to furnish party of the second part a full and complete statement of all rents received by him to date of delivery of possession, from the above-described lands for the year 1918."

The purchaser testified that he had purchased, and would insist upon having, all the rents for 1918, whether accruing before the contract or not, and the evidence showed that the crop was at the time of the contract already moving.

Clearly the agent had no right to bind his principal to sell rents already accrued to him, nor will the agent be heard to say that there was no proof that any had accrued, because it would not lie in his mouth to attempt to bind the principal beyond his authority, and escape the consequences of his action by the plea of damnum absque; besides, if he could make this contention, it was his duty to affirmatively show that his principal had not been damaged, by positive proof that no rents had at that time accrued, whereas the record is not only without evidence to that effect, but its reasonable intendments established the contrary.

Nor is this the only respect in which the agent exceeded his authority. Conceding, as he himself testified, that he was authorized to take the deferred payments in five annual installments, he wholly failed to do this; the contract with the purchaser reading: "$17,000 already on the place to be assumed [the time which it was to run not being stated], and the balance in five equal installments"—the $17,000 to bear interest at 8 per cent., the owner to assume the burden of paying the purchaser 2 per cent. each year, the difference between 6 and 8 per cent., which the assumed notes drew.

The agent, thus standing before the court, upon the undisputed testimony, in the case of one who seeks to recover for a disservice, instead of for a service, of one who had transgressed, instead of complied with, his authority, shows himself disentitled to recover, and the court properly instructed a verdict against him.

Finding no error in the action of the court, the judgment will be affirmed.