Grace KERN, Plaintiff,

v.

Ralph C. GRANQUIST, District Director of Internal Revenue of the United States for the District of Oregon, Defendant,

and

United States of America, Intervenor.

Civ. No. 57–59.

United States District Court
D. Oregon.

July 28, 1960.

Carl E. Davidson, Charles P. Duffy, Portland, Or., for plaintiff.

C. E. Luckey, U. S. Atty., Edward J. Georgeff, Asst. U. S. Atty., Portland, Or., for defendant.

KILKENNY, District Judge.

Plaintiff instituted this action to recover $47,644.04, individual income taxes, plus interest, assessed against and collected from plaintiff for the year 1953 by defendant Granquist, former District Director of Internal Revenue for the District of Oregon. Defendant United States of America was permitted to file an intervening petition demanding judgment against plaintiff for the sum of $112.45, plus interest.

On July 28, 1953, and for many years prior thereto, plaintiff owned and occupied her home and place of residence at 1421 N.E. 15th Avenue, Portland, Oregon. On said date plaintiff sold said home for $325,000 and incurred expenses of sale in the sum of $432.50. On April 1, 1954, plaintiff entered into a written contract with Coma & Kibbe, building contractors, to construct for her a new home and residence in the City of Portland. Under this agreement the contractor agreed to provide all labor and materials and to do all things necessary for the proper construction and completion of the new residence in accordance with the plans and specifications which were part and parcel of the construction agreement, the contractor to receive as compensation for his services a sum equal to 10% of the total cost of construction, with certain exceptions. The owner agreed to reimburse the contractor, or pay directly, all costs necessarily incurred in the prosecution of the work and the contractor agreed to have the building ready for occupancy by the owner on or before January 15, 1955. Construction of the new residence was commenced soon after April 1, 1954, and plaintiff moved into the new residence shortly after January 4, 1955, although at that time the construction had not been entirely completed. The residence was not finally completed until December,

1955. Plaintiff occupied and used the new residence as her principal place of residence within the 18-month period as required by § 112(n) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112 (n). The total cost incurred by plaintiff for construction of the new residence was $280,841.77. Work on construction of the new residence was performed both before and after January 27, 1955, the expiration date of the 18-month period which began on the date of plaintiff's sale of the old residence on July 27, 1953.

The issue to be decided by the court is whether, in computing the capital gain to be recognized by a taxpayer upon the sale of an old residence and the construction of a new residence, under the provisions of Section 112(n) of the 1939 Code (formerly 26 U.S.C.A. § 112), the cost of the construction of the new residence is to include the entire cost of the completed residence, if incurred during the 18-month period (as plaintiff contends) or only the amount of the cost attributable to the construction physically completed within the 18-month period provided by the statute (as defendant contends).

The contract establishes that the entire cost of the construction of the new residence was incurred prior to January 27, 1955. The plaintiff was occupying such new residence prior to such date. The testimony is undisputed that all major items were ordered prior to said date and plaintiff's liability was established for such cost prior to such date. The expense for the work performed and materials furnished under the contract to said date was $131,099.31 and the expense for the work performed and materials furnished under the contract after said date was $149,742.46. The total expense, as aforesaid, being $280,841.77.

The statute involved reads thus:

Internal Revenue Code of 1939, Section 112 (26 U.S.C. 1952 ed., § 112)

"(n) *Gain from sale or exchange of residence.*

"(1) *Nonrecognition of gain.* If property (hereinafter in this section called 'old residence') used by the taxpayer as his principal residence is sold by him and, within a period beginning one year prior to the date of such sale and ending one year after such date, property (hereinafter in this subsection called 'new residence') is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized *only to the extent* that the taxpayer's selling price of the old residence exceeds the taxpayer's cost of purchasing the new residence.

\*   \*   \*   \*   \*

"(2)(D) A residence any part of which was constructed or reconstructed by the taxpayer shall be considered as purchased by the taxpayer. In determining the taxpayer's cost of purchasing a residence, there shall be included only so much of his cost as is attributable to the \* \* \* construction \* \* \* and improvements *made* which are properly chargeable to capital account, during the period specified in paragraph (1).

\*   \*   \*   \*   \*

"(F) If the taxpayer, during the period described in paragraph (1), purchases more than one residence which is used by him as his principal residence at some time within one year after the date of the sale of the old residence, only the last of such residences so used by him after the date of such sale shall constitute the new residence. If within the one year referred to in the preceding sentence property used by the taxpayer as his principal residence is destroyed, stolen, seized, requisitioned, or condemned, or is sold or exchanged under threat or imminence thereof, then for the purposes of the preceding sentence such one year shall be considered as ending with the date of such destruction, theft, seizure, requisition, condemnation, sale, or exchange.

"(G) In the case of a new residence the construction of which was

commenced by the taxpayer prior to the expiration of one year after the date of the sale of the old residence, the period specified in paragraph (1), and the one year referred to in subparagraph (F) of this paragraph, shall be considered as including a period of 18 months beginning with the date of the sale of the old residence." (Emphasis added.)

Treasury Regulation 118, Section 29, 112(n)–1(b) (5) provides:

"The taxpayer's cost of purchasing the new residence includes only so much of such cost as is attributable to acquisition, construction, reconstruction, or improvements *made* within the two year or 30 months period of time, as the case may be." (Emphasis added.)

The 30-month period refers to the 12-month period prior to the sale and the 18-month period after the sale. The old residence was sold on July 27, 1953; thus, the 18-month period following the sale ended on January 27, 1955.

The contract required that the house be completed by January 15, 1955. Completion was not made on that date on account of the interior woodwork which was to be supplied by an independent contractor and which was not delivered on time. Most of said interior woodwork going into the job was custom made.

■ ■ Before proceeding to analyze and construe the statute in question we should have in mind a few general rules. Throughout this case the defendant has contended that the plaintiff might have terminated or substantially changed or modified the building contract and that such instrument was not binding on her so as to create or incur a liability for the cost of the structure in accordance with the plans and specifications prior to January 27, 1955. I do not agree with this contention. Under a provision permitting alterations or modifications, such as the one involved in this case, the right to alter or change is limited to changes which do not unreasonably alter the character of the work. There can be no material change so as to constitute a radical or substantial departure from the original contract. Ann.Cas. 1915D, 758; 9 Am.Jur. p. 14. Therefore, we have for consideration a contract creating a liability on the part of the plaintiff to construct a new home in substantial conformity with the plans and specifications which were agreed upon long prior to said 27th day of January, 1955.

■ In administering the income tax laws common sense interpretation and ordinary business standards should be followed. Rhodes v. Commissioner, 6 Cir., 1939, 100 F.2d 966; Commissioner of Internal Revenue v. Strong Manufacturing Co., 6 Cir., 1941, 124 F.2d 360, certiorari denied Helvering v. Strong Mfg. Co., 316 U.S. 651, 62 S.Ct. 945, 86 L.Ed. 1733.

Substance, not form, should control in construing and applying income tax laws. United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180; Hatch's Estate v. Commissioner, 9 Cir., 1952, 198 F.2d 26; Helvering v. A. L. Killian Co., 8 Cir., 1942, 128 F.2d 433; Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360. Taxation is an intensely practical matter and deals with realities, not semblances, and with substance, not form. Teleservice Co. of Wyoming Valley v. Commissioner, 3 Cir., 1958, 254 F.2d 105.

■ The fact that the taxpayer incurred a liability to construct the home is not controlling. The plaintiff's rights are governed by the language of the statute creating such rights. The statute in question, being in the nature of an exception in favor of the taxpayer, is to be strictly construed against such person. James v. United States, D.C., 176 F.Supp. 270; Korherr v. Bumb, 9 Cir., 1958, 262 F.2d 157; Vondermuhll v. Helvering, 1935, 64 App.D.C. 137, 75 F.2d 656; Cornell v. Coyne, 192 U.S. 418, 431, 24 S.Ct. 383, 48 L.Ed. 504.

The word "made" is probably the most important word used in the statute. I feel that this word is probably decisive

of the question before the court. As used in this text, the word must necessarily be used in the past tense. It seems rather clear that Congress construed the language to mean "* * * improvements *made* during the period specified in paragraph (1)." In the present case, this would mean the cost of improvements *made* to January 27, 1955. The supplemental report of the Senate Finance Committee, S.Rep.781, 82d Cong., 1st Sess., shows the Committee interpreted the language of the statute as follows:

"This section of the bill (referring to subsection (g)) as passed by the House included in the taxpayer's cost of purchasing the new residence only so much of the cost as is attributable to acquisition, construction, reconstruction or improvements *made* within the two year period of time in which the purchase of the new residence must be made in order to have gain not recognized under the amendment and which is properly chargeable to capital account rather than to current expense." (Emphasis added.)

For our purposes, the two-year period of time mentioned in said supplemental report would be the period ending January 27, 1955.

The Conference Committee report, H. Rep.No.1179, 82d Cong., 1st Sess., shows that the Senate-House Conference had the same understanding of the language. We quote from the report:

"If the taxpayer commences construction of the new residence more than one year prior to the date of the sale of the old residence, in determining the taxpayer's cost of building the new residence *there will be included only so much of the cost as is attributable to the construction made during the period beginning one year prior to the date of the sale of the old residence and ending 18 months after such sale.*" (Emphasis added.)

Clearly, the Congress intended to allow only that portion of the cost of the construction *made* during the period beginning one year prior to the date of the sale of the old residence and ending 18 months after such sale.

If there was any doubt, Treasury Regulation 118, Section 39, 112(n)–1(b) (5) removes the same. It provides in part:

"The taxpayer's cost of purchasing the new residence includes only so much of such cost as is attributable to acquisition, construction, reconstruction, or improvements *made* within the two year or 30 months period of time, as the case may be." (Emphasis added.)

The fact that this treasury regulation so construing the language of the statute has been in force and effect for a great many years is entitled to great weight by the Court. Diamond v. Sturr, 2 Cir., 1955, 221 F.2d 264; Werner v. United States, 7 Cir., 1959, 264 F. 489.

Plaintiff also relies on the language of a part of said treasury regulation providing:

"* * * Commissions and *other purchasing expenses paid* or *incurred* by the taxpayer on the purchase of the new residence are to be included in determining such costs." (Emphasis added.)

I believe that the rule of ejusdem generis should be applied to this language and that the phrase, "other purchasing expenses" should be and is restricted to those things of the same class as commissions. United States v. Phez Co., 9 Cir., 1928, 28 F.2d 106; Kirkley v. Portland Electric Power Co., 136 Or. 421, 298 P. 237; Fourco Glass Co. v. Transmirra Products Corporation, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786. Under this rule of construction general words in a statute are confined to the class which it has specifically described and may not be used to enlarge it. Cleveland v. United States, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12; United States Fidelity & Guaranty Co. v. Thomlinson-Arkwright Co., 172 Or. 307, 141 P.2d 817. If the regulation supported the plaintiff's theory, it would be in direct conflict with

the statute under which it was promulgated and in such case would be void. Commissioner of Internal Revenue v. Netcher, 7 Cir., 1944, 143 F.2d 484, certiorari denied 323 U.S. 759, 65 S.Ct. 92, 89 L.Ed. 607; United States v. Massey Motors, Inc., 5 Cir., 1959, 264 F.2d 552; Granquist v. Hackleman, 9 Cir., 1959, 264 F.2d 9.

My sympathies are all with the plaintiff in this case. In equity and good conscience she should be entitled to prevail. However, her right of recovery is based on the statute and regulations in question and under those I can find no theory of recovery. This opinion shall stand as my findings in the case.

Counsel for defendant shall draft an appropriate judgment.